UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RASHAD LAMAR KING,

    Plaintiff,

v.

E. MACAY, et al.,

    Defendants.

Case No. 21-cv-08309-DMR (PR)

**ORDER OF SERVICE**

## I. INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at Centinela State Prison, has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleges a violation of his constitutional rights by prison officials at Salinas Valley State Prison ("SVSP"), where he was previously incarcerated. In his complaint, Plaintiff names the following SVSP prison officials in both their individual and official capacities: Correctional Sergeants C. Tange and E. Macay; Chief Deputy Warden E. Borla; Warden M. Atchley; and Associate Warden John Doe #1. Dkt. 1 at 2, 9.[1] Plaintiff seeks injunctive relief as well as monetary and punitive damages. *Id.* at 13-14.

Plaintiff has consented to magistrate judge jurisdiction. Dkt. 6. Therefore, this matter has been assigned to the undersigned Magistrate Judge. Dkt. 3. He has been granted leave to proceed *in forma pauperis*. Dkt. 8.

Venue is proper because the events giving rise to the claims are alleged to have occurred at SVSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

## II. BACKGROUND

Plaintiff alleges that during a two-month period from February 13, 2020 through April 17,

---

[1] Page number citations refer to those assigned by the court's electronic case management filing system and not those assigned by Plaintiff.

2020, he was in a cell that was prone to flooding and lacked working plumbing for several days throughout the two-month period, which caused his cell to be covered in "feces, urine and sewage." Dkt. 1 at 6-8, 18. From the beginning, on February 13, 2020, Plaintiff noticed a "tag on the door, leaking water . . . and sewage water covering the cell floor." *Id.* at 6. Plaintiff informed the officer, who told him that a "work order had already been placed to fix the problem." *Id.* However, from February 13 through 29, Plaintiff's cell conditions did not change and he "constantly asked [Defendants Macay and Tange] and several officers to address the unsanitary conditions in his cell." *Id.* Plaintiff also wrote to Defendant Tange about this matter. *Id.*

On February 29, 2020, Plaintiff had a "sports injury to the ankle" and he was placed "on crutches with a splint." *Id.* Plaintiff received a "medical order" stating "no walking, no standing nor lifting of more than 10 pounds and no work." *Id.*

On March 1, 2020, Plaintiff showed his "medical order" to Defendants Macay and Tange and "requested a new cell," but his request was denied. *Id.* Plaintiff then asked "for maintenance due to [his] sink [being] clogged and cell flooded from [the] rain and leaking sewage and [he] needed [his] toilet flushed [but] they told [him] they didn't care." *Id.* Around 11:00 am, Plaintiff's toilet was not flushing, and he "had to use a 3-5 gallon bucket of water to pour water rapidly into the toilet . . . ." *Id.* at 6-7. As Plaintiff was "going to lift the bucket, [he] slipped in the flooded water hitting [his] head, landing on [his] hip, and hitting [his] foot on the toilet damaging his foot more." *Id.* at 7. Plaintiff yelled for help, to no avail. *Id.* He looked out his cell and saw Defendant Tange, but she ignored his pleas for help. *Id.* Plaintiff claims that he "suffered excruciating pain when [he] fell," and, as of the time he drafted the complaint, he has "been suffering from a possible permanent injury that is irreparable [and from] constant chronic pain, that affects [his] daily activities." *Id.* Specifically, he claims the "right side of [his] lower body locks on [him] to where [he] can't move or walk sending throbbing pain up [his] lower right foot up [his] leg to [his] lower right back." *Id.*

After picking himself up after the fall and "walk[ing] to medical on his own," Plaintiff then managed to walk over to Defendants Macay and Tange to ask for maintenance, but they "told [him] they weren't calling anyone[,] [and to] take it back to [his] building or [he] would be given

2

1  a[] Rules Violation Report (RVR)." *Id.* They also told Plaintiff "they didn't care about [his]
2  problems or injury." *Id.*

3      For the next two weeks, Plaintiff submitted requests for "plumbing and maintenance to no
4  avail." *Id.* at 8.

5      On March 1, 2002, maintenance finally came to fix the plumbing, but "it wasn't fixed fully
6  and [he] moved back to the same cell . . . with the same plumbing issues on March 2, 2020." *Id.*
7  The flooding and plumbing problems continued, and he "informed Defendants and other prison
8  officials" about his cell conditions "from February 13, 2002 to April 5, 2020 and on." *Id.* at 18.

9      Plaintiff claims that during a majority of the two-month period he was "on crutches and
10  had to constantly walk through raw swage without any use of sanitation materials." *Id.* at 19. He
11  also "had no power for almost 6 days where he couldn't brush his teeth, wash his face and [he]
12  was] exposed to human waste [and] having to breathe in the human waste, causing severe
13  headaches." *Id.*

14      Plaintiff submitted inmate appeals about his conditions, including "deliberate indifference
15  to a human's basic needs and substantial risk to [his] health," but Defendants Borla and "John Doe
16  #1" reviewed "[his] grievance Log #SVSP-20-01210 and failed to ensure a safe cell for [him] to
17  live in." *Id.* at 20.

18      Plaintiff claims that the "plumbing issues have been ongoing since 2017" and "[t]here have
19  been several civil suits pertaining to ongoing plumbing issues," and as SVSP's warden, Defendant
20  Atchley, "had prior knowledge of the unconstitutional conditions and culpable actions of [his]
21  subordinates but failed to act and rectify the matter of having cells properly fixed of leaking
22  sewage and rain leakage flooding cells." *Id.* at 21.

23  **III.   DISCUSSION**
24      **A.   Standard of Review**
25  A federal court must conduct a preliminary screening in any case in which a prisoner seeks
26  redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.
27  § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims
28  that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek

3

monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer*, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to

4

the rights of others.'" *Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Evidence of a prisoner's letter to an administrator alerting him to a constitutional violation is sufficient to generate a genuine issue of material fact as to whether the administrator was aware of the violation, even if he denies knowledge and there is no evidence the letter was received. *Jett*, 439 F.3d at 1098. Evidence that a prison supervisor was personally involved in an unconstitutional transfer and denied all appeals of the transfer, for example, may suffice. *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *see also Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (supervisor who signed internal affairs report dismissing complaint against officer despite evidence of officer's use of excessive force may be liable for damages).

### B.  Eighth Amendment Claims

#### 1.  Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 104). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Liberally construed, the complaint states a cognizable Eighth Amendment claim against Defendants Macay and Tange for deliberate indifference to Plaintiff's serious medical needs based on the allegation that he was in crutches due to an ankle injury and, on March 1, 2020, these Defendants ignored Plaintiff's "medical order" and denied his requests to move to a different cell

or for maintenance to fix his plumbing/flooding issues. Plaintiff also states a cognizable Eighth Amendment claim against Defendant Tange for ignoring Plaintiff's pleas for help after he slipped and fell in his cell, also on March 1, 2020.

### 2. Deprivation of Basic Needs

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See id.* at 732-37. The requisite state of mind to establish an Eighth Amendment violation depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." *See, e.g., Farmer*, 511 U.S. at 834 (inmate safety); *Helling*, 509 U.S. at 32-33 (inmate health); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health).

Neither negligence nor gross negligence will constitute deliberate indifference. *See Farmer*, 511 U.S. at 835-36 & n.4; *see also Estelle*, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.* An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious

6

1    harm. *See id.* at 842. This is a question of fact. *See Farmer*, 511 U.S. at 842. A heightened
2    pleading standard applies to the subjective prong of Eighth Amendment claims: the plaintiff must
3    make nonconclusory allegations supporting an inference of unlawful intent. *Alfrey v. United*
4    *States*, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard to *Bivens* Eighth Amendment
5    claim).

6    Read liberally, the allegations in Plaintiff's complaint state an Eighth Amendment claim
7    against Defendants Macay and Tange for acting with deliberate indifference during the
8    aforementioned two-month period by refusing to "act on their knowledge of a[] substantial risk of
9    harmful conditions that exposed Plaintiff to unsafe and inhumane conditions that deprived
10   Plaintiff of basic human need [for] sanitation and hyg[ie]ne." Dkt. 1 at 11. Plaintiff claims that
11   such conditions led him to suffer "severe headaches," *id.* at 19, and "chronic pain" after he slipped
12   (due to the flooding in his cell) and fell on March 1, 2020, *id.* at 7. Plaintiff also states an Eighth
13   Amendment claim against Defendants Borla and "John Doe #1," who reviewed Plaintiff's appeals
14   and did not remedy the constitutional violation. Finally, liberally construed, Plaintiff states a
15   supervisory liability claim against Defendant Atchley.

16   Regarding Defendant "John Doe #1," Plaintiff describes this Defendant as an "Associate
17   Warden between February 2020 and September 2020," but Plaintiff states that he does know this
18   Defendant's name. *Id.* at 20. Although the use of "John Doe" to identify a defendant is not
19   favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wiltsie v.*
20   *Cal. Dep't of Corrections*, 406 F.2d 515, 518 (9th Cir. 1968), situations may arise where the
21   identity of alleged defendants cannot be known prior to the filing of a complaint. In such
22   circumstances, the plaintiff should be given an opportunity through discovery to identify the
23   unknown defendants, unless it is clear that discovery would not uncover their identities or that the
24   complaint should be dismissed on other grounds. *See Gillespi*e, 629 F.2d at 642; *Velasquez v.*
25   *Senko*, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986). Plaintiff must provide to the court the name of
26   Defendant "John Doe # 1" by the date scheduled in this Order for any served Defendant to file a
27   dispositive motion. Failure to do so may result in dismissal of Defendant "John Doe # 1" *without*
28   *prejudice to Plaintiff filing a new action against this Defendant once his/her name is known.*

7

**IV.   CONCLUSION**

For the foregoing reasons, the court orders as follows:

1. Plaintiff's complaint states a cognizable claim of deliberate indifference to his medical needs against Defendants Macay and Tange.

2. Plaintiff states a cognizable Eighth Amendment claim that Defendants Macay, Tange, Borla, and "John Doe #1" acted with deliberate indifference to his health and safety needs.

3. Plaintiff also states a cognizable supervisory liability claim against Defendant Atchley.

4. Plaintiff must provide to the court the name of Defendant "John Doe # 1" by the dispositive motion due date indicated below. Failure to do so will result in dismissal of Defendant "John Doe # 1" without prejudice to Plaintiff filing a new action against this Defendant once his/her name is known.

5. The following Defendant(s) shall be served: **Correctional Sergeants C. Tange and E. Macay; Chief Deputy Warden E. Borla; and Warden M. Atchley at SVSP.**

Service on the listed Defendant(s) shall proceed under the California Department of Corrections and Rehabilitation's (CDCR) e-service pilot program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the clerk is directed to serve on CDCR via email the following documents: the operative complaint, this order of service, the notice of assignment of prisoner case to a United States magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent form, a CDCR Report of E-Service Waiver form and a summons.

No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which Defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which Defendant(s) decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver and of the notice of assignment of prisoner case to a magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent form to the California Attorney

8

1   General's Office, which, within **twenty-one (21) days**, shall file with the court a waiver of service
2   of process for the Defendant(s) who are waiving service and, within **twenty-eight (28) days**
3   thereafter, shall file a magistrate judge jurisdiction consent or declination to consent form as to the
4   Defendant(s) who waived service.

5   Upon receipt of the CDCR Report of E-Service Waiver, the clerk shall prepare for each
6   Defendant who has not waived service according to the CDCR Report of E-Service Waiver a
7   USM-205 Form.  The clerk shall provide to the USMS the completed USM-205 form and copies
8   of this order, summons, operative complaint and notice of assignment of prisoner case to a
9   magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent
10  form for service upon each defendant who has not waived service.  The clerk also shall provide to
11  the USMS a copy of the CDCR Report of E-Service Waiver.

12  The clerk shall also mail a copy of the operative complaint and a copy of this order to the
13  State Attorney General's Office in San Francisco.  Additionally, the clerk shall mail a copy of this
14  order to Plaintiff.

15  6.  Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure
16  requires Defendants to cooperate in saving unnecessary costs of service of the summons and
17  complaint.  If service is waived, this action will proceed as if Defendants had been served on the
18  date that the waiver is filed, except that pursuant to Rule 12(a)(1)(A)(ii), Defendants will not be
19  required to serve and file an answer before **sixty (60) days** from the date on which the CDCR
20  provides a copy of the CDCR Report of E-Service Waiver to the California Attorney General's
21  Office.  (This allows a longer time to respond than would be required if formal service of
22  summons is necessary.)  If Defendants have not waived service and have instead been served by
23  the USMS, then Defendants shall serve and file an answer within **twenty-one (21) days** after
24  being served with the summons and complaint.

25  7.  Defendants shall answer the complaint in accordance with the Federal Rules of
26  Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:
27  a.  No later than **sixty (60) days** from the date their answer is due, Defendants
28  shall file a motion for summary judgment or other dispositive motion.  The motion must be

9

1    supported by adequate factual documentation, must conform in all respects to Federal Rule of

2    Civil Procedure 56, and must include as exhibits all records and incident reports stemming from

3    the events at issue.  A motion for summary judgment also must be accompanied by a *Rand*[2] notice

4    so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to

5    oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out

6    in Rand must be served concurrently with motion for summary judgment).  A motion to dismiss

7    for failure to exhaust available administrative remedies must be accompanied by a similar notice.

8    However, the court notes that under the new law of the circuit, in the rare event that a failure to

9    exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule

10   12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion.

11   *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315

12   F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative

13   remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a

14   defendant as an unenumerated Rule 12(b) motion).  Otherwise if a failure to exhaust is not clear on

15   the face of the complaint, Defendants must produce evidence proving failure to exhaust in a

16   motion for summary judgment under Rule 56.  *Id.*  If undisputed evidence viewed in the light most

17   favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment

18   under Rule 56.  *Id.*  But if material facts are disputed, summary judgment should be denied and the

19   district judge rather than a jury should determine the facts in a preliminary proceeding.  *Id.* at

20   1168.

21          If Defendants are of the opinion that this case cannot be resolved by summary judgment,

22   they shall so inform the court prior to the date the summary judgment motion is due.  All papers

23   filed with the court shall be promptly served on Plaintiff.

24                  b.      Plaintiff's opposition to the dispositive motion shall be filed with the court

25   and served on Defendants no later than **twenty-eight (28) days** after the date on which

26   Defendants' motion is filed.

---

[2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

10

   c. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

  Plaintiff also is advised that—in the rare event that Defendants argue that the failure to exhaust is clear on the face of the complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents— documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.      Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

        e.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

8. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

9. All communications by Plaintiff with the court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

10. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the court has been returned to the court as not deliverable, and (2) the court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

11. Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

IT IS SO ORDERED.

Dated: August 28, 2022

_____
DONNA M. RYU
United States Magistrate Judge

12